**LADARREN EARL RIVERS**
5564 Henderson Road
Montgomery, Alabama 36117
Phone: +1 334-590-7993
Email: ladarren.rivers@proton.me
Plaintiff, in propria persona

RECEIVED

2025 OCT 30  P 3: 42

U.S.            RT
MIDDLE DISTRICT ALA

## UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF ALABAMA

| | |
|---|---|
| **LADARREN EARL RIVERS** }<br>          *Plaintiff,* }<br> }<br>v. }<br> }<br>**AT&T MOBILITY LLC;** }<br>**NEW CINGULAR WIRELESS PCS, LLC** }<br>**d/b/a AT&T MOBILITY; and** }<br>**AT&T INC** }<br>          *Defendant.* } | Case No. 2:25-cv-00864-RAH-KFP<br><br>Date: 10 / 29 /20 25 |

## * COMPLAINT*

### COMPLAINT FOR:

1. Declaratory Judgment
2. Violations of Truth in Lending Act
3. Violations of Fair Debt Collection Practices Act
4. Violations of Fair Credit Reporting Act
5. Breach of Contract
6. Breach of Covenant of Good Faith and Fair Dealing
7. Violations of Alabama Deceptive Trade Practices Act
8. Violations of Alabama Consumer Credit Act
9. Violations of UCC Article 9
10. Unjust Enrichment
11. Retaliation for Exercising Consumer Rights
12. Injunctive Relief
13. Restitution and Damages

### EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER

### NATURE OF THE ACTION

This is a consumer protection action arising from Defendants' systematic violations of federal and state consumer protection laws, including the Truth in Lending Act (TILA), Fair Debt Collection Practices Act (FDCPA), and Alabama consumer protection statutes.

On October 29, 2025, Defendants terminated Plaintiff's wireless service—despite Plaintiff's explicit written demand six days earlier requesting account preservation during the dispute period. This retaliatory termination occurred during the FDCPA 30-day validation period, in violation of 15 U.S.C. § 1692g(b), demonstrating willful violations of federal consumer protection law and bad faith conduct warranting punitive damages.

Plaintiff seeks declaratory judgment regarding the enforceability of retail installment contracts that lack authenticated signatures, emergency restoration of unlawfully terminated telecommunications service, injunctive relief preventing further retaliation, actual damages, statutory damages, treble damages under Alabama law, enhanced damages for willful violations, restitution of improperly collected fees, punitive damages, attorney fees, and costs.

This action involves substantial questions of federal law and arises under 15 U.S.C. § 1601 et seq. (Truth in Lending Act), 15 U.S.C. § 1681 et seq. (Fair Credit Reporting Act), and 15 U.S.C. § 1692 et seq. (Fair Debt Collection Practices Act).

## JURISDICTION AND VENUE

A. Subject Matter Jurisdiction

This Court has subject matter jurisdiction pursuant to:

a. 28 U.S.C. § 1331 (federal question jurisdiction) - This action arises under federal statutes including the Truth in Lending Act (15 U.S.C. § 1601 et seq.), Fair Debt Collection Practices Act (15 U.S.C. § 1692 et seq.), and Fair Credit Reporting Act (15 U.S.C. § 1681 et seq.).

b. 28 U.S.C. § 1367 (supplemental jurisdiction) - This Court has supplemental jurisdiction over Plaintiff's state law claims because they arise from the same nucleus of operative facts as the federal claims.

c. 15 U.S.C. § 1640(e) - TILA specifically provides for jurisdiction in "any appropriate United States district court."

d. 15 U.S.C. § 1692k(d) - FDCPA specifically provides for jurisdiction in "any appropriate United States district court."

B. Venue

Venue is proper in the United States District Court for the Middle District of Alabama pursuant to 28 U.S.C. § 1391(b) because:

a. Plaintiff resides in Montgomery, Alabama, which is within the Middle District of Alabama, Eastern Division.

b. A substantial part of the events or omissions giving rise to the claims occurred in this District, including the execution of contracts, provision of services, assessment of charges, service termination, and Defendants' refusal to provide required documentation.

c. Defendants conduct substantial business in this District and have sufficient minimum contacts to support personal jurisdiction.

d. The retail installment contracts at issue designate Alabama law as governing law.

C. Personal Jurisdiction

This Court has personal jurisdiction over Defendants because:

a. Defendants conduct substantial and continuous business in Alabama.

b. Defendants have registered agents for service of process in Alabama.

c. Defendants entered into contracts with Alabama residents, including Plaintiff.

d. Defendants' actions giving rise to this lawsuit occurred in Alabama, including the October 29, 2025 service termination.

e. Exercise of personal jurisdiction comports with due process.

## PARTIES

A. Plaintiff

Plaintiff LADARREN RIVERS is an individual and natural person who at all relevant times has been a resident of Montgomery, Montgomery County, Alabama.

Plaintiff is a "consumer" as defined by 15 U.S.C. § 1602(i) and 15 U.S.C. § 1692a(3).

Plaintiff is a "debtor" as defined by Ala. Code § 7-9-102(a)(28).

Plaintiff has been a customer of Defendants' wireless telecommunications services since at least November 2024.

B. Defendants

Defendant AT&T MOBILITY LLC is a limited liability company organized and existing under the laws of Delaware, with its principal place of business at 1025 Lenox Park Boulevard NE, Atlanta, Georgia 30319.

Defendant AT&T Mobility LLC is authorized to conduct business in Alabama and maintains a registered agent for service of process at CT Corporation System, 2 North Jackson Street, Suite 605, Montgomery, AL 36104.

Defendant NEW CINGULAR WIRELESS PCS, LLC d/b/a AT&T MOBILITY is a limited liability company organized and existing under the laws of Delaware, with its principal place of business at 1025 Lenox Park Boulevard NE, Atlanta, Georgia 30319.

Defendant New Cingular Wireless PCS, LLC d/b/a AT&T Mobility is authorized to conduct business in Alabama and maintains a registered agent for service of process at CT Corporation System, 2 North Jackson Street, Suite 605, Montgomery, AL 36104.

Defendant AT&T INC. is a corporation organized and existing under the laws of Delaware, with its principal place of business at 208 S. Akard Street, Dallas, Texas 75202.

Defendant AT&T Inc. is the parent company of the other Defendants and exercises control over their policies, practices, and operations.

At all times relevant to this Complaint, Defendants acted through their officers, directors, employees, agents, and representatives, and within the scope of their authority.

Defendants are "creditors" as defined by 15 U.S.C. § 1602(g) and 15 U.S.C. § 1692a(4).

Defendants are "secured parties" as defined by Ala. Code § 7-9-102(a)(73).

Defendants regularly extend consumer credit and engage in the collection of consumer debts.

## FACTS COMMON TO ALL CLAIMS

A. The November 2024 Device Transactions

On or about November 17-18, 2024, Plaintiff purchased two electronic devices from Defendants pursuant to retail installment contracts.

Device 1: Apple iPhone 16 Pro Max

Device ID/IMEI: 180000053955361

Amount Financed: $1,199.99
Monthly Payment: $33.34
Term: 36 months
Annual Percentage Rate: 0.00%
Associated Phone Number: 334-590-7993

Device 2: Apple Watch Ultra 2

Device ID/IMEI: 180000053955362
Amount Financed: $799.99
Monthly Payment: $22.23
Promotional Credit: -$2.78/month
Net Monthly Payment: $19.45
Term: 36 months
Annual Percentage Rate: 0.00%
Associated Phone Number: 334-590-8045

Both contracts were labeled "CREDIT SALE CONTRACT/RETAIL INSTALLMENT
CONTRACT/RETAIL INSTALLMENT OBLIGATION/RETAIL INSTALLMENT SALE
AGREEMENT/CONDITIONAL SALES CONTRACT/SECURITY AGREEMENT."

Both contracts purport to create "purchase money security interests" in the devices pursuant to the
Uniform Commercial Code.

Both contracts incorporate by reference a "Service Agreement" containing arbitration provisions,
though this separate Service Agreement was never provided to Plaintiff at the time of device
purchase.

Both contracts designate the law of Alabama as the governing law.

B. The Signature Authentication Problem

The copies of both retail installment contracts provided to Plaintiff show:

a. A buyer signature line with the date "11/17/2024" but no visible signature image from Plaintiff.

b. A seller signature showing "New Cingular Wireless PCS, LLC d/b/a AT&T Mobility" with the
date "11/17/2024" but no visible signature from any authorized representative of Defendants.

Upon information and belief, Defendants' document management systems have failed to capture,
store, or reproduce signature images on these contracts.

Despite Plaintiff's written demand dated October 23, 2025, Defendants have failed to produce:

a. Original signed contracts with visible signatures;

b. Electronic signature capture records with audit trails;

c. E-SIGN Act compliance documentation (15 U.S.C. § 7001(c));

d. Video surveillance of contract execution (if executed in-store);

e. IP address logs (if executed online); or

f. Sworn affidavit from any person with personal knowledge of Plaintiff's contract execution.

Defendants' failure to maintain or produce authenticated contracts raises substantial questions about the validity and enforceability of these agreements.

Both devices financed under these contracts exceed $500 in value, triggering the Alabama Statute of Frauds requirement that contracts for the sale of goods over $500 must be in writing and signed by the party to be charged. Ala. Code § 8-9-2; UCC § 2-201.

Under UCC § 9-203(b)(3)(A), a security interest is enforceable against a debtor only if "the debtor has authenticated a security agreement that provides a description of the collateral."

"Authenticated" requires a signature or other symbol executed with the present intent to adopt or accept the record. Ala. Code § 7-9-102(a)(7).

Without authenticated security agreements, Defendants' claimed security interests in the devices may be void and unenforceable.

C. The Administrative Fee Scheme

Since November 2024, Defendants have charged Plaintiff $3.49 per line per month, described as "Administrative & Regulatory Cost Recovery Fee."

Plaintiff maintains four lines of wireless service, resulting in total monthly administrative fees of $13.96.

From November 2024 through September 2025 (11 months), Defendants charged Plaintiff a total of $153.56 in administrative fees.

These fees are characterized on Plaintiff's bills as fees to "defray certain expenses" and to recover "regulatory costs."

However, Defendants' own billing statement admits: "These fees are not taxes or charges that the government requires AT&T to collect from its customers." (Emphasis added.)

The fees purportedly recover costs for:

Interconnection charges with other carriers
Cell site rents and maintenance
Compliance with government-imposed regulatory requirements

These expenses are ordinary costs of doing business that should be incorporated into the advertised service prices.

Upon information and belief, the "Administrative & Regulatory Cost Recovery Fee" is a profit center for Defendants, not a true cost recovery mechanism.

Upon information and belief, Defendants collect hundreds of millions of dollars annually from this fee across their customer base while incurring only a fraction of that amount in actual costs.

The characterization of discretionary profit-based fees as "regulatory cost recovery" is materially misleading to consumers.

Reasonable consumers would understand "Administrative & Regulatory Cost Recovery Fee" to be a government-mandated or regulatory-required charge, not a discretionary profit markup.

This misleading characterization makes Defendants' advertised service prices deceptively low and prevents consumers from making informed comparisons with competitors.

Despite Plaintiff's written demand for documentation, Defendants have failed to provide:

Breakdown of actual costs being "recovered"
Revenue collected vs. expenses incurred
Authorization for these fees in the Service Agreement
Disclosure that these fees are discretionary profit markups

D. The Late Payment Fee

On October 10, 2025, Defendants assessed an $8.00 late payment fee against Plaintiff's account.

On September 19, 2025, Plaintiff made payments totaling $294.25 via MasterCard, as reflected on Defendants' October 2025 billing statement.

Defendants' records show these payments "posted Sep 19."

Plaintiff's previous billing statement showed a balance due of $645.97.

After the $294.25 payment, the remaining balance was $351.72.

Despite Plaintiff's written demand, Defendants have failed to provide:

Copy of the previous billing statement showing the payment due date
Proof that payment was made after the due date
Disclosure of minimum payment requirements
Authorization for the $8.00 late fee in the Service Agreement

Without documentation showing the due date and payment requirements, Plaintiff cannot verify whether the late payment fee was properly assessed.

Upon information and belief, the $8.00 late payment fee substantially exceeds Defendants' actual costs in processing late payments and constitutes a penalty rather than liquidated damages.

E. Promotional Credit Documentation Failure

The Apple Watch Ultra 2 contract shows a promotional credit of $2.78 per month, labeled "Promotional Credit 11 of 36" on Plaintiff's October 2025 bill.

This promotional credit appears to be for 36 months, totaling approximately $100.08 in value.

Despite Plaintiff's written demand, Defendants have failed to provide:

Original promotional offer materials from November 2024
Complete written terms and conditions of the promotion
Total promotional value and duration
Conditions for continued receipt of credits
Effect of early device payoff on promotional credits
Effect of service cancellation on promotional credits
Whether promotion was contingent on trade-in or new line activation

The retail installment contract for the Apple Watch Ultra 2 makes no mention of the promotional credit and shows the full amount financed as $799.99.

If the promotional credit effectively reduces the net cost to Plaintiff, the Truth in Lending Act requires disclosure of this reduced "amount financed."

Defendants' failure to provide written promotional terms violates TILA's disclosure requirements and leaves Plaintiff uncertain about his rights and obligations.

F. Defendants' Refusal to Comply with Statutory Demands

On October 23, 2025, Plaintiff sent Defendants a comprehensive written demand via RPost registered email and certified mail, return receipt requested.

Plaintiff's demand included:

a. UCC § 9-210 Accounting Demand: Pursuant to Ala. Code § 7-9-210, Plaintiff demanded a complete authenticated accounting of the secured obligations on both devices, due within 14 days.

b. FDCPA Debt Validation Demand: Pursuant to 15 U.S.C. § 1692g, Plaintiff disputed various charges and demanded validation, including proof of contract formation, complete payment history, and authorization for all fees.

c. Request for Authenticated Contracts: Plaintiff demanded production of original signed contracts or E-SIGN Act compliance documentation.

d. Explicit Request for Account Preservation: Plaintiff explicitly demanded that Defendants NOT suspend, disconnect, or terminate service during the dispute period.

e. Settlement Offer: Plaintiff offered to settle all claims for $7,500 to avoid litigation.

The RPost registered email was delivered to Defendants on October 23, 2025.

Defendants acknowledged receipt of Plaintiff's demand on October 23, 2025 via RPost delivery confirmation, establishing actual notice.

The certified mail was delivered to Defendants at their registered addresses.

More than 30 days have passed since Defendants received Plaintiff's demand.

Defendants have failed to provide:

The UCC § 9-210 accounting (due within 14 days)
FDCPA debt validation documentation (due within 30 days)
Authenticated copies of the contracts
Any of the requested documentation
Any substantive response to the settlement offer

Defendants' failure to comply with statutory demands constitutes separate violations of the UCC and FDCPA.

G. Retaliatory Service Termination During Dispute

On October 23, 2025, Plaintiff sent Defendants a comprehensive written demand via RPost registered email and certified mail explicitly requesting that Defendants NOT suspend, disconnect, or terminate service during the dispute period.

Defendants acknowledged receipt of Plaintiff's demand on October 23, 2025 via RPost delivery confirmation, establishing actual notice of Plaintiff's request and legal rights.

On October 29, 2025, only six days after receiving Plaintiff's explicit written demand, Defendants terminated Plaintiff's wireless service on all four lines.

This termination occurred:

During the FDCPA 30-day validation period (15 U.S.C. § 1692g(b))
During AT&T's own 60-day informal dispute resolution period
Despite Plaintiff's explicit written request for account preservation
Despite Defendants' acknowledgment of receipt and investigation
Without providing any of the requested documentation or validation
Without responding substantively to Plaintiff's settlement offer
Without providing any legitimate business justification

The service termination has caused Plaintiff immediate and ongoing harm, including:

Loss of employment and business communications
Loss of emergency 911 access
Loss of family emergency contact capability
Loss of children's school communications
Loss of medical appointment reminders and contact capability
Loss of two-factor authentication access for banking and essential online services
Inability to receive calls, texts, or access mobile data
Cost to obtain alternative telecommunications service
Emotional distress from loss of essential communications
Fear and anxiety regarding inability to contact or be contacted in emergencies

Plaintiff immediately demanded restoration of service within 24 hours.

As of the date of this Complaint filing, Defendants have not restored service.

Defendants' termination of service during an active good-faith dispute constitutes:

Willful violation of FDCPA § 1692g(b) (collection during validation period)
Willful violation of FDCPA § 1692d (harassment through service termination)

Breach of covenant of good faith and fair dealing

Retaliation for exercising consumer rights

Bad faith conduct supporting punitive damages

Separate and additional harm warranting increased damages

Unconscionable conduct under Alabama law

The temporal proximity between Plaintiff's October 23, 2025 assertion of rights and Defendants' October 29, 2025 service termination (only 6 days) establishes a causal connection and demonstrates retaliatory intent.

The service termination demonstrates Defendants' bad faith and their intent to use Plaintiff's need for essential telecommunications services as leverage to coerce payment of disputed, unvalidated amounts.

Defendants' conduct violates public policy protecting consumers' rights to dispute charges and seek validation without fear of retaliation.

H. Collection Activities on Disputed Debts

Despite Plaintiff's written dispute of charges and demand for validation pursuant to 15 U.S.C. § 1692g, Defendants have continued collection activities.

Under 15 U.S.C. § 1692g(b), debt collectors must cease collection of disputed amounts until validation is provided.

The most extreme collection activity—termination of essential telecommunications services—was taken on October 29, 2025, during the 30-day validation period.

Upon information and belief, Defendants have reported or will report Plaintiff's account as delinquent to consumer credit reporting agencies.

Upon information and belief, Defendants may assess additional late fees or charges related to the disputed amounts.

Defendants' continued collection activity on unvalidated disputed debts, culminating in service termination, constitutes willful violations of the FDCPA.

I. Timeline of Retaliatory Conduct

The following timeline establishes the willful and retaliatory nature of Defendants' violations:

November 17-18, 2024: Device purchases and alleged contract formation

November 2024 - September 2025: Billing period during which $153.56 in administrative fees charged

October 10, 2025: Bill issued with $8.00 late fee assessed

October 23, 2025 (Morning): Plaintiff sends comprehensive demand via RPost and certified mail, including:

  - FDCPA validation request pursuant to § 1692g

  - UCC accounting demand pursuant to § 7-9-210

  - Explicit demand NOT to terminate service during dispute

  - Settlement offer of $7,500

October 23, 2025 (Afternoon): AT&T acknowledges receipt via RPost confirmation (PROOF OF ACTUAL NOTICE)

October 29, 2025: DEFENDANTS TERMINATE SERVICE (6 days after actual notice)

October 30, 2025: Plaintiff demands immediate restoration within 24 hours

[Filing Date]: Complaint filed; service remains terminated; ongoing daily harm

The six-day gap between Plaintiff's assertion of rights and Defendants' service termination establishes:

Temporal proximity demonstrating causation

Retaliatory intent

Willful violation (actual notice + termination = willfulness)

Bad faith conduct supporting punitive damages

Consciousness of wrongdoing

This timeline demonstrates that Defendants' violations were not negligent or accidental, but rather willful, intentional, and retaliatory.

J. Settlement Offer Withdrawn

Plaintiff's October 23, 2025 demand included an offer to settle all claims for $7,500 to avoid litigation and demonstrate Plaintiff's good faith in seeking resolution.

Defendants' termination of service on October 29, 2025, only six days after receiving the settlement offer, demonstrates:

Bad faith and unwillingness to engage in good-faith settlement discussions

Intent to use service termination as leverage rather than engage in negotiation

Disregard for Plaintiff's reasonable attempt at pre-litigation resolution

Retaliatory conduct in response to Plaintiff's assertion of legal rights

Plaintiff hereby withdraws the $7,500 settlement offer.

Defendants' retaliatory conduct has:

Substantially increased Plaintiff's actual damages (ongoing service loss)
Demonstrated willful violations warranting statutory and punitive damages
Eliminated the possibility of expedient pre-trial settlement
Necessitated emergency judicial intervention
Reduced the likelihood of any settlement absent substantial damages award

The withdrawn settlement offer demonstrates Plaintiff's good faith and Defendants' bad faith.

COUNT I: DECLARATORY JUDGMENT - CONTRACT UNENFORCEABILITY
(28 U.S.C. § 2201; Fed. R. Civ. P. 57)

Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 90 as if fully set forth herein.

An actual controversy exists between Plaintiff and Defendants regarding the enforceability of the retail installment contracts dated November 17-18, 2024.

Defendants claim the contracts are valid, binding, and enforceable, and that Plaintiff owes:

$833.25 remaining balance on the iPhone 16 Pro Max
$555.46 remaining balance on the Apple Watch Ultra 2
Various fees and charges totaling hundreds of dollars

Plaintiff disputes the enforceability of these contracts due to lack of authenticated signatures.

Under the Alabama Statute of Frauds (Ala. Code § 8-9-2) and UCC § 2-201, contracts for the sale of goods exceeding $500 must be in writing and signed by the party to be charged.

Both devices exceed $500 in value, triggering the Statute of Frauds.

The copies of the contracts provided to Plaintiff lack any visible signature from either party.

Defendants have failed to produce authenticated originals despite written demand.

Without authenticated signatures, the contracts may be unenforceable under the Statute of Frauds.

Under UCC § 9-203(b)(3)(A), security interests are enforceable only if the debtor has "authenticated a security agreement" describing the collateral.

Without authenticated security agreements, Defendants' claimed purchase money security interests in the devices may be void.

If the security interests are void, Plaintiff owns the devices free and clear of any claims by Defendants.

Plaintiff is entitled to a declaratory judgment that:

a. The retail installment contracts are unenforceable due to lack of authenticated signatures;
b. Defendants' claimed security interests in the devices are void;
c. Plaintiff owns both devices free and clear of any claims by Defendants;
d. Plaintiff has no obligation to make further installment payments; and
e. Defendants must release any security interests and cease all collection activities related to these devices.

A declaratory judgment will resolve the actual controversy between the parties and is necessary to guide Plaintiff's future conduct.

WHEREFORE, Plaintiff requests that this Court enter declaratory judgment in Plaintiff's favor as set forth above.

## COUNT II: TRUTH IN LENDING ACT VIOLATIONS
(15 U.S.C. § 1638, § 1640)

Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 104 as if fully set forth herein.

Defendants are "creditors" within the meaning of 15 U.S.C. § 1602(g).

Plaintiff is a "consumer" within the meaning of 15 U.S.C. § 1602(i).

The retail installment contracts constitute "consumer credit transactions" within the meaning of 15 U.S.C. § 1602(i).

A. Failure to Provide Authenticated Contracts

Under 15 U.S.C. § 1638(b), creditors must furnish consumers with a copy of any writing evidencing the credit transaction.

Defendants provided Plaintiff with copies of contracts that lack authenticated signatures, making it impossible for Plaintiff to prove the terms agreed upon.

Defendants' failure to maintain and provide authenticated contracts violates TILA's requirement to furnish complete documentation of the credit transaction.

B. Inadequate Disclosure of Promotional Credits

The Apple Watch Ultra 2 includes promotional credits of $2.78 per month, totaling approximately $100.08 over 36 months.

These credits effectively reduce the "amount financed" from $799.99 to approximately $699.91.

Under 15 U.S.C. § 1638(a)(2)(B), creditors must clearly disclose the "amount financed."

The contract shows the amount financed as $799.99, failing to disclose the effect of promotional credits.

Under 15 U.S.C. § 1632(a), consumers must receive a written statement of the credit terms.

Defendants failed to provide any written documentation of the promotional credit terms, conditions, or contingencies.

This failure violates TILA's disclosure requirements and prevents Plaintiff from understanding the true cost and terms of the credit.

C. Inadequate Disclosure of Fees

Defendants charge $13.96 per month in administrative fees that were not disclosed in the device installment contracts.

These fees increase the total cost of the credit transaction.

Under 15 U.S.C. § 1638, all finance charges and costs must be clearly disclosed.

Defendants' failure to disclose administrative fees in the installment contracts violates TILA.

D. Damages

As a result of Defendants' TILA violations, Plaintiff has suffered actual damages including confusion about contract terms, inability to verify charges, and time spent attempting to obtain required disclosures.

Under 15 U.S.C. § 1640(a)(2)(A), Plaintiff is entitled to statutory damages of twice the finance charge, but not less than $200 nor more than $2,000 per violation.

Given multiple violations (unauthenticated contracts, inadequate promotional credit disclosure, inadequate fee disclosure), Plaintiff is entitled to statutory damages of at least $6,000.

Under 15 U.S.C. § 1640(a)(3), Plaintiff is entitled to costs of this action and reasonable attorney fees.

WHEREFORE, Plaintiff requests:

Actual damages;
Statutory damages of $6,000 or such amount as the Court deems appropriate;
Costs of this action;
Reasonable attorney fees as required by statute; and
Such other relief as the Court deems just and proper.

COUNT III: FAIR DEBT COLLECTION PRACTICES ACT VIOLATIONS
(15 U.S.C. § 1692g, § 1692k)

Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 126 as if fully set forth herein.

To the extent Defendants are collecting debts owed to themselves, certain provisions of the FDCPA apply to original creditors. To the extent provisions do not apply, Plaintiff pleads this count in the alternative.

Plaintiff is a "consumer" within the meaning of 15 U.S.C. § 1692a(3).

The amounts claimed by Defendants constitute "debts" within the meaning of 15 U.S.C. § 1692a(5).

A. Failure to Validate Disputed Debt

On October 23, 2025, Plaintiff sent Defendants written notice disputing various charges and demanding debt validation pursuant to 15 U.S.C. § 1692g.

Plaintiff specifically disputed:

Past due balance: $351.72
Late payment fee: $8.00
Administrative fees: $153.56
Charges dependent on unsigned contracts

Under 15 U.S.C. § 1692g(b), upon receipt of a written dispute within 30 days, debt collectors must cease collection until validation is obtained and provided to the consumer.

More than 30 days have passed, and Defendants have failed to provide the required validation, including:

Authenticated copies of contracts
Complete payment history
Authorization for fees assessed
Proof that charges are legitimate

Despite failing to validate the disputed debts, Defendants have continued collection activities, including the most extreme collection action: termination of essential telecommunications services.

B. False or Misleading Representations

Under 15 U.S.C. § 1692e, debt collectors may not use false, deceptive, or misleading representations in connection with debt collection.

Defendants' October 2025 billing statement and subsequent actions contain false or misleading representations, including:

a. Claiming amounts are "past due" when they are disputed and unvalidated;
b. Threatening service interruption for non-payment of disputed amounts;
c. Actually terminating service for non-payment of disputed, unvalidated amounts;
d. Assessing late fees without providing evidence the fee is legitimate;
e. Characterizing discretionary profit fees as "regulatory cost recovery."

These representations violate 15 U.S.C. § 1692e.

C. Unfair Practices

Under 15 U.S.C. § 1692f, debt collectors may not use unfair or unconscionable means to collect debts.

Defendants' assessment of an $8.00 late fee that substantially exceeds actual costs constitutes an unfair practice.

Defendants' threat to suspend essential wireless services during a good-faith dispute constitutes an unfair practice.

Defendants' actual termination of essential wireless services during a good-faith dispute, during the FDCPA validation period, and despite explicit written request not to do so, constitutes an unconscionable collection practice in violation of § 1692f.

D. Harassment and Abuse

Under 15 U.S.C. § 1692d, debt collectors may not engage in conduct the natural consequence of which is to harass, oppress, or abuse any person.

Terminating essential telecommunications services—including emergency 911 access—during an active dispute is inherently harassing and oppressive.

This conduct is designed to coerce payment through deprivation of essential services rather than through legitimate collection methods.

This violates 15 U.S.C. § 1692d.

E. Willful Violations

Defendants' FDCPA violations are willful, not merely negligent.

On October 23, 2025, Defendants received Plaintiff's written demand explicitly:

Disputing charges pursuant to § 1692g
Requesting cessation of collection activities
Requesting account preservation during dispute period
Offering good-faith settlement

Defendants acknowledged receipt of this demand on October 23, 2025 via RPost delivery confirmation, establishing actual notice.

Despite actual notice of their legal obligations under the FDCPA, Defendants:

Terminated service six days later on October 29, 2025
Failed to provide debt validation within 30 days
Continued collection activities on disputed debt
Took the most extreme collection action (service termination) during the validation period
Ignored explicit written request to preserve account status

This demonstrates Defendants knew or should have known they were violating the FDCPA.

The temporal proximity between notice (October 23) and violation (October 29)—only six days—proves willfulness.

Willful violations support:

Enhanced actual damages
Statutory damages up to $1,000
Punitive damages
Mandatory attorney fees

F. Damages

As a result of Defendants' FDCPA violations, Plaintiff has suffered actual damages including:

Stress and emotional distress
Time spent disputing charges (over 100 hours at $60/hour = $6,000)
Fear of service interruption (which materialized)
Actual service loss since October 29, 2025
Cost of obtaining alternative telecommunications service
Lost business opportunities due to service termination
Inability to receive emergency communications
Harm to credit reputation

Additional damages from service termination:

Daily harm from October 29, 2025 to present: $100/day
Alternative service costs: $[to be calculated]
Lost business/employment communications: $[to be calculated]
Emotional distress from service loss: $2,000
Total actual damages exceed $10,000 and continue to accrue daily.

Under 15 U.S.C. § 1692k(a)(1), Plaintiff is entitled to actual damages.

Under 15 U.S.C. § 1692k(a)(2)(A), Plaintiff is entitled to statutory damages up to $1,000.

Given the willful nature of violations, Plaintiff requests the maximum statutory damages of $1,000.

Under 15 U.S.C. § 1692k(a)(3), Plaintiff is entitled to costs and reasonable attorney fees.

WHEREFORE, Plaintiff requests:

Actual damages in excess of $10,000;
Statutory damages of $1,000;
Enhanced damages for willful violations;
Costs of this action;
Reasonable attorney fees as required by statute; and

Such other relief as the Court deems just and proper.

## COUNT IV: FAIR CREDIT REPORTING ACT VIOLATIONS
(15 U.S.C. § 1681s-2)

Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 155 as if fully set forth herein.

Defendants furnish information to consumer reporting agencies regarding consumers' credit accounts.

Under 15 U.S.C. § 1681s-2(a), persons who furnish information to consumer reporting agencies have a duty to provide accurate information.

Upon information and belief, Defendants have reported or will report Plaintiff's account as delinquent to consumer credit reporting agencies.

Plaintiff has disputed the charges in good faith and has demanded validation pursuant to the FDCPA.

The disputed amounts remain unvalidated.

Reporting disputed, unvalidated amounts as delinquent is inaccurate and misleading.

Under 15 U.S.C. § 1681s-2(b), when a consumer disputes information, furnishers must investigate the dispute and report it as disputed while investigation is pending.

Defendants have failed to properly investigate Plaintiff's dispute and have failed to report the account as disputed.

Defendants' furnishing of inaccurate information violates the FCRA and harms Plaintiff's creditworthiness.

As a result, Plaintiff has suffered actual damages to his credit reputation and credit score.

Under 15 U.S.C. § 1681n, if violations were willful, Plaintiff is entitled to actual damages, statutory damages, punitive damages, costs, and attorney fees.

Under 15 U.S.C. § 1681o, if violations were negligent, Plaintiff is entitled to actual damages, costs, and attorney fees.

WHEREFORE, Plaintiff requests:

Actual damages;

Statutory damages;
Punitive damages;
Costs of this action;
Reasonable attorney fees; and
Such other relief as the Court deems just and proper.

## COUNT V: BREACH OF CONTRACT

Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 168 as if fully set forth herein.

Without conceding that valid, enforceable contracts exist, Plaintiff pleads this count in the alternative.

To the extent valid contracts exist, Defendants have breached those contracts.

A. Breach of Installment Contract Terms

The retail installment contracts require Defendants to properly calculate and bill monthly installments according to the agreed payment schedule.

The contracts prohibit late payment fees "specific to unpaid installment plan charges."

Defendants assessed an $8.00 late payment fee despite contract terms and without proving payment was actually late.

This constitutes breach of the contract terms.

B. Breach of Service Requirements

The installment contracts require Plaintiff to "maintain eligible voice and/or data wireless services" on the devices.

Plaintiff has maintained continuous service from November 2024 through October 28, 2025.

Defendants' termination of service on October 29, 2025, during a good-faith dispute over charges, interferes with Plaintiff's contractual obligations and constitutes material breach.

Plaintiff cannot "maintain eligible wireless services" if Defendants terminate those services.

This breach frustrates the purpose of the installment contracts.

C. Breach of Disclosure Obligations

The contracts incorporate various disclosures required by law.

Defendants breached their disclosure obligations by:

Failing to provide authenticated contract copies
Failing to disclose promotional credit terms in writing
Failing to disclose administrative fee terms in the installment contracts

D. Damages

As a result of Defendants' breaches, Plaintiff has suffered damages including:

Improper late payment fee: $8.00
Time and effort addressing breaches (100+ hours at $60/hour): $6,000.00
Account correction costs: $250.00
Service termination damages: $[ongoing daily calculation]
Lost business opportunities: $[to be calculated]
Other actual damages to be proven at trial

WHEREFORE, Plaintiff requests:

Actual damages;
Consequential damages;
Costs of this action;
Such other relief as the Court deems just and proper.

## COUNT VI: BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 181 as if fully set forth herein.

Under Alabama law, every contract contains an implied covenant of good faith and fair dealing.

This covenant requires parties to act in good faith and deal fairly with each other.

Defendants breached the implied covenant of good faith and fair dealing by:

a. Refusing to provide basic documentation: Despite written demand and statutory obligations, Defendants refuse to provide authenticated contracts, UCC accountings, debt validation, and other basic documentation to which Plaintiff is entitled.

b. Assessing fees without justification: Defendants assessed an $8.00 late fee without providing evidence the fee was proper and without responding to Plaintiff's legitimate questions.

c. Characterizing fees misleadingly: Defendants characterize discretionary profit fees as "regulatory cost recovery," misleading customers about the nature of charges.

d. Threatening service interruption: Prior to October 29, 2025, Defendants threatened to suspend essential services during a good-faith dispute, using Plaintiff's need for service as leverage to compel payment of disputed amounts.

e. Actually terminating service: On October 29, 2025, Defendants terminated essential telecommunications services during an active good-faith dispute, during the FDCPA validation period, and despite explicit written request not to do so. This demonstrates the ultimate bad faith and use of Plaintiff's need for essential services as leverage to coerce payment of unvalidated disputed amounts.

f. Ignoring settlement offer: Defendants ignored Plaintiff's reasonable pre-litigation settlement offer of $7,500, instead choosing to retaliate by terminating services, forcing Plaintiff into costly litigation and emergency judicial intervention.

g. Failing to maintain proper records: Defendants' apparent failure to maintain authenticated signature records on contracts exceeding $500 demonstrates lack of good faith in contract administration.

h. Willful violation of FDCPA: Despite acknowledging receipt of Plaintiff's dispute and validation demand on October 23, 2025, Defendants took the most extreme collection action possible six days later, demonstrating contempt for federal consumer protection law.

i. Retaliatory conduct: The six-day gap between Plaintiff's assertion of rights and Defendants' service termination establishes retaliatory intent and demonstrates bad faith.

The service termination, occurring within days of Plaintiff's assertion of legal rights, constitutes the most egregious breach of good faith possible in a consumer services relationship.

Defendants' conduct demonstrates a systematic lack of good faith and fair dealing.

As a result of Defendants' breach, Plaintiff has suffered actual damages exceeding $10,000 and continuing to accrue daily.

Given the egregious nature of the bad faith conduct, particularly the retaliatory service termination, Plaintiff is entitled to substantial punitive damages.

WHEREFORE, Plaintiff requests:

Actual damages in excess of $10,000;
Punitive damages in an amount sufficient to punish and deter such conduct;
Costs of this action; and
Such other relief as the Court deems just and proper.

## COUNT VII: ALABAMA DECEPTIVE TRADE PRACTICES ACT
(Ala. Code § 8-19-1 et seq.)

Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 191 as if fully set forth herein.

Defendants are engaged in "trade" or "commerce" as defined by Ala. Code § 8-19-3(2).

The Alabama Deceptive Trade Practices Act prohibits deceptive acts or practices in the conduct of trade or commerce.

Ala. Code § 8-19-5 prohibits:

Representing that goods or services have characteristics that they do not have;
Representing that goods or services are of a particular standard, quality, or grade when they are of another;
Advertising goods or services with intent not to sell them as advertised;
Engaging in any other unconscionable, false, misleading, or deceptive act or practice.

A. Deceptive Fee Characterization

Defendants characterize discretionary profit-based fees as "Administrative & Regulatory Cost Recovery Fee."

This characterization represents that the fees are imposed to recover regulatory costs or comply with government requirements.

Defendants' own billing disclosure admits: "These fees are not taxes or charges that the government requires AT&T to collect from its customers."

Reasonable consumers would understand "regulatory cost recovery" to mean government-mandated or regulatory-required charges, not discretionary profit markups.

This misrepresentation makes Defendants' advertised service prices deceptively low.

Consumers cannot make informed price comparisons when Defendants hide profit margins in fees characterized as cost recovery.

This practice constitutes a deceptive trade practice under Ala. Code § 8-19-5.

B. Deceptive Contract Practices

Defendants represent that consumers are bound by retail installment contracts.

However, Defendants cannot or will not produce authenticated copies showing consumers actually agreed to the terms.

Claiming consumers are bound by unsigned contracts constitutes a deceptive practice.

Defendants' failure to maintain proper signature records while claiming contracts are binding is unconscionable.

C. Deceptive Fee Assessment

Defendants assess late payment fees without providing documentation that fees are legitimate.

Defendants characterize fees as "late payment fees" when they may not be justified by actual late payment.

This constitutes a deceptive practice.

D. Knowing and Willful Violations

Defendants' deceptive practices are systematic, affecting millions of customers nationwide.

Upon information and belief, Defendants are aware that:

Administrative fees are profit centers, not true cost recovery
The "regulatory cost recovery" characterization is misleading
Many customers do not understand the discretionary nature of these fees

Defendants' continuation of these practices despite knowledge of their deceptive nature constitutes knowing and willful violations.

The service termination on October 29, 2025, six days after being put on notice of Plaintiff's dispute, demonstrates willful disregard for consumer rights and knowing violation of Alabama consumer protection law.

E. Damages and Treble Damages

As a result of Defendants' deceptive practices, Plaintiff has suffered actual damages of at least $10,000, including:

Administrative fees: $153.56
Late payment fee: $8.00
Time and effort (100+ hours at $60/hour): $6,000.00
Account correction costs: $250.00
Service termination damages (ongoing): $3,000+ and continuing
Alternative service costs: $[to be calculated]
Lost business opportunities: $[to be calculated]

Under Ala. Code § 8-19-10(a), persons injured by deceptive trade practices may recover treble damages.

Given the knowing and willful nature of Defendants' violations, particularly the retaliatory service termination demonstrating contempt for consumer rights, Plaintiff is entitled to treble damages.

Under Ala. Code § 8-19-10(f), Plaintiff is entitled to reasonable attorney fees.

WHEREFORE, Plaintiff requests:

Actual damages of at least $10,000;
Treble damages pursuant to Ala. Code § 8-19-10(a);
Reasonable attorney fees;
Costs of this action; and
Such other relief as the Court deems just and proper.

## COUNT VIII: ALABAMA CONSUMER CREDIT ACT VIOLATIONS
(Ala. Code § 5-19-1 et seq.)

Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 213 as if fully set forth herein.

The retail installment contracts are "consumer credit sales" as defined by Ala. Code § 5-19-2(7).

Defendants are "creditors" as defined by Ala. Code § 5-19-2(11).

Plaintiff is a "consumer" as defined by Ala. Code § 5-19-2(6).

A. Inadequate Disclosure Violations

Under Ala. Code § 5-19-20, creditors must disclose the following information clearly and conspicuously in writing before consummation of a consumer credit sale:

Amount financed
Finance charge
Annual percentage rate
Payment schedule
Total of payments

Defendants failed to adequately disclose:

The effect of promotional credits on the amount financed (Apple Watch Ultra 2)
Administrative fees that increase the total cost
Complete payment schedule accounting for promotional credits

These inadequate disclosures violate the Alabama Consumer Credit Act.

B. Failure to Provide Contract Copies

Under Ala. Code § 5-19-20, creditors must furnish consumers with a copy of the writing evidencing the consumer credit sale.

Defendants provided Plaintiff with contracts lacking authenticated signatures, which do not constitute complete evidence of the transaction.

This failure violates the Alabama Consumer Credit Act.

C. Unconscionable Terms and Practices

Under Ala. Code § 5-19-5, unconscionable terms in consumer credit transactions are prohibited.

The following terms and practices are unconscionable:

Claiming consumers are bound by contracts without maintaining authenticated signatures
Assessing fees characterized as "regulatory cost recovery" when they are discretionary profit markups
Threatening service interruption during good-faith disputes over charges

Actually terminating essential telecommunications services during a good-faith dispute, during the statutory validation period, and despite explicit written request not to do so

Using service termination as leverage to coerce payment of unvalidated disputed amounts

These unconscionable practices violate Ala. Code § 5-19-5.

D. Damages

As a result of Defendants' violations, Plaintiff has suffered actual damages exceeding $10,000 as set forth above.

Under Ala. Code § 5-19-31, consumers injured by violations of this Act may recover actual damages, costs, and reasonable attorney fees.

WHEREFORE, Plaintiff requests:

Actual damages in excess of $10,000;

Costs of this action;

Reasonable attorney fees; and

Such other relief as the Court deems just and proper.

COUNT IX: VIOLATIONS OF UCC ARTICLE 9
(Ala. Code § 7-9-210, § 7-9-625)

Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 228 as if fully set forth herein.

Defendants claim to hold purchase money security interests in the devices pursuant to retail installment contracts.

Under Alabama law, security interests are governed by UCC Article 9.

A. Failure to Provide UCC § 9-210 Accounting

Under Ala. Code § 7-9-210(a), a debtor may request an accounting of unpaid obligations secured by collateral.

On October 23, 2025, Plaintiff sent Defendants a written request for accounting pursuant to § 7-9-210.

Under Ala. Code § 7-9-210(b), the secured party must comply with the request within 14 days by sending an authenticated accounting.

More than 14 days have passed since Defendants received the request (November 6, 2025 deadline).

Defendants have failed to provide the required accounting.

Under Ala. Code § 7-9-210(c), a secured party that fails to comply with a request is liable for any loss caused by the failure.

Under Ala. Code § 7-9-625(e)(6), failure to comply with UCC Article 9 obligations may result in loss of rights to recover deficiencies.

Defendants' failure to provide the accounting has caused Plaintiff loss, including inability to verify the accuracy of claimed balances, time spent demanding compliance, and need to pursue litigation.

B. Unauthenticated Security Agreements

Under Ala. Code § 7-9-203(b)(3)(A), a security interest is enforceable against the debtor only if "the debtor has authenticated a security agreement that provides a description of the collateral."

"Authenticate" means to sign or execute with present intent to adopt or accept a record. Ala. Code § 7-9-102(a)(7).

Defendants cannot produce authenticated security agreements bearing Plaintiff's signature.

Without authenticated security agreements, Defendants' claimed security interests are not enforceable under UCC § 9-203.

If the security interests are unenforceable, Plaintiff owns the devices free and clear of any liens or security interests.

C. Loss of Deficiency Rights

As a result of Defendants' failures to comply with UCC Article 9, including failure to provide accounting and failure to properly authenticate security agreements, Defendants have lost any right to recover deficiencies.

Defendants may not enforce security interests that were not properly created and perfected.

D. Damages

As a result of Defendants' violations of UCC Article 9, Plaintiff has suffered damages including time spent demanding compliance, need to pursue litigation, and uncertainty about the status of claimed security interests.

Under Ala. Code § 7-9-625, Plaintiff is entitled to recover damages for losses caused by Defendants' failures.

WHEREFORE, Plaintiff requests:

Declaratory judgment that Defendants' security interests are void;
Declaratory judgment that Plaintiff owns the devices free and clear;
Declaratory judgment that Defendants have lost deficiency rights;
Actual damages for losses caused by UCC violations;
Costs of this action; and
Such other relief as the Court deems just and proper.

## COUNT X: UNJUST ENRICHMENT

Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 245 as if fully set forth herein.

Plaintiff pleads this count in the alternative to contract-based claims.

Defendants have received money from Plaintiff in the form of:

Administrative fees: $153.56
Late payment fee: $8.00
Potentially other charges that may be improper

Defendants have been enriched by receipt of this money.

It would be unjust for Defendants to retain this money because:

a. Administrative fees: The fees are characterized as "regulatory cost recovery" but are admittedly not government-required and likely constitute profit, not actual cost recovery.

b. Late payment fee: The fee was assessed without providing documentation that payment was actually late or that the fee is justified.

c. Lack of consideration: To the extent contracts are unenforceable due to lack of authenticated signatures, Defendants have no legal basis to retain payments made under those void contracts.

d. Service termination: Defendants terminated the service for which Plaintiff paid, providing no consideration for payments made.

Retention of these funds without legal justification would unjustly enrich Defendants at Plaintiff's expense.

Plaintiff has no adequate remedy at law for the unjust enrichment.

In equity and good conscience, Defendants should be required to return these amounts to Plaintiff.

WHEREFORE, Plaintiff requests:

Restitution of $161.56 (administrative fees plus late fee);
Restitution of any other amounts improperly retained;
Restitution of service payments made for periods during which service was unlawfully terminated;
Such other equitable relief as the Court deems just and proper.

COUNT XI: RETALIATION FOR EXERCISING CONSUMER RIGHTS

Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 255 as if fully set forth herein.

Plaintiff exercised his legal rights under federal and state consumer protection laws by:

Disputing charges pursuant to FDCPA § 1692g
Demanding contract authentication
Demanding UCC accounting pursuant to § 7-9-210
Requesting mandatory TILA disclosures
Offering pre-litigation settlement
Explicitly requesting account preservation during dispute period

On October 23, 2025, Plaintiff sent comprehensive written demand explicitly requesting that Defendants preserve his account and not terminate service during the dispute period.

Defendants acknowledged receipt of this demand on October 23, 2025 via RPost delivery confirmation, establishing actual notice.

Six days later, on October 29, 2025, Defendants terminated Plaintiff's service on all four lines.

The temporal proximity between Plaintiff's exercise of legal rights (October 23) and Defendants' termination of service (October 29)—only six days—establishes a prima facie case of causal connection.

Defendants' termination was retaliatory because:

It occurred immediately after Plaintiff asserted his rights
It occurred during the statutory FDCPA validation period
It occurred during AT&T's own 60-day informal dispute period
It occurred despite explicit written request not to terminate
It occurred despite Defendants' acknowledgement of receipt and investigation
It serves no legitimate business purpose during an active dispute
It is designed to punish Plaintiff for asserting his rights
It is designed to coerce payment of unvalidated disputed amounts
It demonstrates contempt for federal and state consumer protection laws

Retaliatory termination of essential services for exercising consumer rights violates:

Public policy of the State of Alabama
Public policy of the United States as expressed in consumer protection statutes
Covenant of good faith and fair dealing
FDCPA prohibition on harassment and abuse (15 U.S.C. § 1692d)
Constitutional due process rights (termination without validation of debt)
Fundamental fairness and equity

The service terminated includes essential telecommunications capabilities:

Voice communications
Emergency 911 access
Text messaging
Mobile data access
Two-factor authentication for banking and essential services
Business and employment communications
Family emergency contact capability
Medical appointment communications
Children's school communications

Loss of these essential services causes irreparable harm that cannot be adequately compensated by money damages alone.

Defendants' retaliatory conduct demonstrates:

Willful disregard for consumer rights
Intent to use essential services as leverage
Bad faith in dealing with consumer disputes

Consciousness of wrongdoing (they knew their obligations and violated them anyway)
Conduct warranting punitive damages to deter such behavior

The retaliatory service termination has caused Plaintiff:

Ongoing daily harm from service loss
Lost business and employment opportunities
Inability to receive emergency communications
Emotional distress and anxiety
Costs to obtain alternative telecommunications
Harm to professional reputation
Substantial inconvenience and disruption to daily life

Defendants' retaliatory conduct warrants substantial punitive damages to:

Punish this egregious conduct
Deter Defendants from retaliating against other consumers
Send a message that essential services cannot be weaponized against consumers
Vindicate important public policies protecting consumer rights

WHEREFORE, Plaintiff requests:

Actual damages for all harm caused by retaliatory service termination;
Punitive damages in an amount sufficient to punish and deter such conduct;
Immediate restoration of service;
Declaratory judgment that the termination was unlawful and retaliatory;
Injunction preventing future retaliation;
Costs and attorney fees; and
Such other relief as the Court deems just and proper.

**COUNT XII: INJUNCTIVE RELIEF**

Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 284 as if fully set forth herein.

Plaintiff seeks emergency temporary restraining order, preliminary injunction, and permanent injunctive relief.

A. Legal Standard

Under Federal Rule of Civil Procedure 65, the Court may grant temporary restraining orders and preliminary and permanent injunctions.

Plaintiff satisfies the requirements for injunctive relief:

a. Substantial likelihood of success on the merits: Plaintiff has demonstrated strong claims under multiple federal and state statutes, particularly regarding:
- Willful FDCPA violations (collection during validation period with actual notice)
- Unauthenticated contracts violating Statute of Frauds and UCC
- Retaliatory service termination for exercising consumer rights
- Deceptive fee practices

b. Irreparable harm: Plaintiff currently lacks essential telecommunications services including:
- Emergency 911 access
- Business and employment communications
- Family emergency contact capability
- Medical appointment communications
- Two-factor authentication access

This ongoing harm cannot be adequately compensated by money damages alone and constitutes irreparable injury occurring daily.

c. Balance of equities: The balance tips sharply in Plaintiff's favor. Defendants will not be harmed by restoring service during this dispute—they lose nothing but the unlawful leverage they are attempting to exert. Plaintiff faces substantial daily harm from service loss, including safety risks from lack of 911 access.

d. Public interest: The public interest strongly favors:
- Preventing retaliatory service termination during good-faith disputes
- Enforcing federal consumer protection laws
- Ensuring consumers can exercise statutory rights without fear of retaliation
- Maintaining access to essential telecommunications, especially 911 services
- Deterring use of essential services as leverage against consumers

B. Emergency Temporary Restraining Order and Preliminary Injunction

Plaintiff requests an emergency temporary restraining order and preliminary injunction:

**IMMEDIATE TRO (within 24-48 hours) requiring:**

a. Immediate restoration of Plaintiff's wireless service on all four lines (phone numbers 334-590-7993, 334-590-8045, and two additional lines);

b. Restoration without any "restoral fees," reconnection charges, or other penalties;

c. Restoration of full service functionality including voice, text, and data;

d. Preservation and restoration of Plaintiff's telephone numbers;

e. Restoration to the same service plan and features that existed prior to October 29, 2025; and

f. Such restoration to occur within 24 hours of the Court's order.

PRELIMINARY INJUNCTION enjoining Defendants from:

a. Re-suspending or disconnecting service during pendency of this action;

b. Assessing additional late fees, penalties, restoral fees, or charges related to disputed amounts;

c. Assessing any fees or charges related to the unlawful service termination;

d. Reporting negative information to consumer credit reporting agencies regarding disputed amounts;

e. Reporting the service termination to consumer credit reporting agencies;

f. Transferring Plaintiff's account to third-party debt collectors;

g. Taking any adverse action against Plaintiff's account based on non-payment of disputed amounts;

h. Attempting to repossess the devices pending resolution of this action;

i. Retaliating against Plaintiff in any manner for exercising his consumer rights or filing this lawsuit; and

j. Continuing collection activities on disputed, unvalidated debts.

Plaintiff satisfies the requirements for a TRO under Rule 65(b):

Specific facts in verified complaint show immediate and irreparable injury: Service has been terminated since October 29, 2025; Plaintiff lacks emergency 911 access and essential communications daily.

Certification of efforts to provide notice: Plaintiff will provide notice to Defendants simultaneously with filing, or will certify reasons why notice should not be required.

Security: Plaintiff requests waiver of security requirement given the nature of claims (consumer protection) and Plaintiff's limited financial resources, or will post nominal security as Court requires.

Emergency hearing requested: Due to ongoing daily harm from service loss and safety concerns from lack of 911 access, Plaintiff requests an expedited hearing within 24-48 hours of filing.

C. Permanent Injunction

Following trial, Plaintiff requests a permanent injunction:

a. Declaring the contracts unenforceable due to lack of authenticated signatures;

b. Requiring Defendants to release all claimed security interests in the devices;

c. Requiring Defendants to correct Plaintiff's credit reports to remove any negative information related to this dispute;

d. Enjoining Defendants from characterizing discretionary profit fees as "regulatory cost recovery" in Alabama;

e. Requiring Defendants to clearly disclose the discretionary nature of administrative fees to all Alabama customers;

f. Enjoining Defendants from terminating service during good-faith disputes while FDCPA validation is pending;

g. Requiring Defendants to implement policies ensuring compliance with FDCPA, TILA, and UCC obligations; and

h. Such other injunctive relief as the Court deems appropriate.

WHEREFORE, Plaintiff requests:

Emergency temporary restraining order as set forth above within 24-48 hours;
Preliminary injunction pending trial;
Permanent injunction following trial;
Expedited hearing on TRO and preliminary injunction;
Costs of this action; and
Such other relief as the Court deems just and proper.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court:

Declaratory Relief

1. Enter declaratory judgment that the retail installment contracts dated November 17-18, 2024 are unenforceable due to lack of authenticated signatures;

2. Enter declaratory judgment that Defendants' claimed security interests in the devices are void and unenforceable;

3. Enter declaratory judgment that Plaintiff owns both devices (iPhone 16 Pro Max and Apple Watch Ultra 2) free and clear of any liens, security interests, or claims by Defendants;

4. Enter declaratory judgment that Plaintiff has no obligation to make further installment payments on void contracts;

5. Enter declaratory judgment that the October 29, 2025 service termination was unlawful, retaliatory, and in violation of federal and state law;

Emergency and Injunctive Relief

6. Enter emergency temporary restraining order immediately restoring Plaintiff's wireless service on all four lines;

7. Enter preliminary injunction preventing Defendants from re-suspending service, assessing additional fees, reporting to credit agencies, or taking other adverse actions during this litigation;

8. Enter permanent injunction requiring Defendants to release security interests, correct credit reports, and comply with consumer protection laws;

9. Schedule expedited hearing on emergency TRO and preliminary injunction within 24-48 hours;

Monetary Damages

10. Award actual damages including:
   - Improperly collected administrative fees: $153.56
   - Improperly assessed late payment fee: $8.00
   - Time and effort (100+ hours at $60/hour): $6,000.00
   - Account correction costs: $250.00
   - Service termination damages: $100/day from October 29, 2025 to restoration
   - Cost of alternative telecommunications service
   - Lost business opportunities
   - Emotional distress: $2,000.00
   - Such greater amounts as proven at trial

11. Award statutory damages under the Truth in Lending Act in the amount of $6,000 or such amount as the Court deems appropriate;

12. Award statutory damages under the Fair Debt Collection Practices Act in the amount of $1,000;

13. Award statutory damages under the Fair Credit Reporting Act;

14. Award treble damages under the Alabama Deceptive Trade Practices Act pursuant to Ala. Code § 8-19-10(a);

15. Award enhanced damages for willful violations of consumer protection statutes;

16. Award substantial punitive damages for:
   - Breach of the covenant of good faith and fair dealing
   - Willful violations of FDCPA with actual notice
   - Retaliatory termination of essential services
   - Unconscionable collection practices
   - Bad faith conduct designed to coerce payment through deprivation of essential services
   In an amount sufficient to punish such egregious conduct and deter future violations;

**Restitution**

17. Order restitution of all improperly collected administrative fees ($153.56);

18. Order restitution of improperly assessed late payment fee ($8.00);

19. Order restitution of service payments made for periods during which service was unlawfully terminated;

20. Order restitution of any other amounts improperly collected;

Attorney Fees and Costs

21. Award reasonable attorney fees as mandatory under:
   - Truth in Lending Act (15 U.S.C. § 1640(a)(3))
   - Fair Debt Collection Practices Act (15 U.S.C. § 1692k(a)(3))
   - Fair Credit Reporting Act (15 U.S.C. § 1681n or § 1681o)
   - Alabama Deceptive Trade Practices Act (Ala. Code § 8-19-10(f))
   - Alabama Consumer Credit Act (Ala. Code § 5-19-31)

22. Award all costs of this action including filing fees, service costs, deposition costs, expert witness fees, and other litigation expenses;

Additional Relief

23. Award pre-judgment and post-judgment interest at the applicable legal rate;

24. Grant such other and further relief as this Court deems just, proper, and equitable.

## JURY TRIAL DEMAND

Plaintiff demands a trial by jury on all issues so triable pursuant to Federal Rule of Civil Procedure 38(b).

## REQUEST FOR EXPEDITED HEARING ON EMERGENCY TEMPORARY RESTRAINING ORDER

Due to Defendants' actual termination of Plaintiff's wireless service on October 29, 2025, and the ongoing daily harm from loss of essential telecommunications including emergency 911 access, Plaintiff respectfully requests an expedited hearing on the motion for emergency temporary restraining order within 24-48 hours to prevent continuing irreparable harm and safety risks.

The service has been terminated for 1 days as of the filing date, causing ongoing actual and irreparable injury daily.

Respectfully submitted this 24 day of October , 2025.

LADARREN RIVERS, Pro Se
5564 Henderson Road
Montgomery, AL 36117-7202
Phone: 334-590-7993
Email: ladarren.rivers@proton.me

## VERIFICATION

I, LADARREN RIVERS, declare under penalty of perjury under the laws of the United States of America that I have read the foregoing Complaint, that I know the contents thereof, and that the same is true of my own knowledge except as to those matters stated on information and belief, and as to those matters, I believe them to be true.

On October 23, 2025, I sent Defendants a comprehensive written demand via RPost registered email and certified mail explicitly requesting that they not terminate my wireless service during the dispute period. Defendants acknowledged receipt on October 23, 2025.

On October 29, 2025, only six days later, Defendants terminated my wireless service on all four lines despite my explicit written request not to do so during the dispute period.

As of the date of this filing, my service remains terminated, causing me daily harm including loss of emergency 911 access, loss of business communications, loss of family contact capability, and substantial inconvenience and distress. This demonstrates Defendants' bad faith, willful violations of consumer protection law, and retaliatory conduct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this _24_ day of _October_, 2025, at Montgomery, Alabama.

LADARREN RIVERS
Plaintiff

CERTIFICATE OF SERVICE

I hereby certify that on this _24_ day of _October_, 2025, I caused true and correct copies of the foregoing Complaint to be served upon Defendants via:

☐ Personal service by U.S. Marshal
☐ Certified mail, return receipt requested

Served upon:

AT&T MOBILITY LLC
c/o CT Corporation System (Registered Agent)
2 North Jackson Street, Suite 605
Montgomery, AL 36104

NEW CINGULAR WIRELESS PCS, LLC d/b/a AT&T MOBILITY
c/o CT Corporation System (Registered Agent)
2 North Jackson Street, Suite 605
Montgomery, AL 36104

AT&T INC.
c/o CT Corporation System (Registered Agent)

2 North Jackson Street, Suite 605
Montgomery, AL 36104

LADARREN RIVERS

EXHIBITS TO BE ATTACHED

Exhibit A: Pre-Litigation Settlement Demand Letter dated October 23, 2025
Exhibit B: RPost Delivery Confirmation showing October 23, 2025 receipt and acknowledgment
Exhibit C: AT&T Bill dated October 10, 2025 (5 pages)
Exhibit D: Credit Sale Contract - iPhone 16 Pro Max (Installment ID: 180000053955361)
Exhibit E: Credit Sale Contract - Apple Watch Ultra 2 (Installment ID: 180000053955362)
Exhibit F: Payment confirmation records (September 19, 2025 payments)
Exhibit G: Certified mail receipts showing service of Pre-Litigation Demand
Exhibit H: Documentation of October 29, 2025 service termination (screenshots, account status)
Exhibit I: Timeline and Account Analysis
Exhibit J: Damages Summary and Calculation
Exhibit K: Evidence of daily harm from service termination
Exhibit L: Alternative service costs documentation