IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| LADARREN EARL RIVERS, | ) |
| Plaintiff, | ) |
| v. | ) CASE NO. 2:25-CV-864-RAH |
| AT&T MOBILITY LLC, *et al.*, | ) |
| Defendants. | ) |

# MEMORANDUM OPINION AND ORDER

## INTRODUCTION

Pending before the Court is the *Motion By Defendant AT&T Inc. To Dismiss Plaintiff's Complaint For Lack of Personal Jurisdiction, Or In The Alternative, To Compel Arbitration* (doc. 11) and the *Motion To Compel Arbitration* (doc. 12) filed by Defendants AT&T Mobility LLC, New Cingular Wireless PCS, LLC d/b/a AT&T Mobility, and AT&T Inc. Plaintiff LaDarren Earl Rivers opposes both motions. After careful review, the motions, to the extent they seek to compel arbitration, will be granted.

## BACKGROUND

In November 2024, Rivers purchased an Apple Watch Ultra 2 and iPhone Pro Max from AT&T. (Doc. 12-1 at 37–42.) At the time of purchase, Rivers electronically acknowledged the AT&T Consumer Service Agreement (CSA) which included a three-page dispute resolution program. (*Id.* at 6–8.) That program included a provision calling for the arbitration of certain disputes. (*Id.*) At the top of the very first page of the CSA in bold text AT&T disclosed the following: "Please read this Agreement carefully. It requires you and AT&T to resolve disputes through arbitration on an individual basis rather than jury trials or class actions." (*Id.* at 5.)

Under the dispute resolution program, Rivers and AT&T agreed to "arbitrate all disputes and claims between [Rivers] and AT&T, except for claims arising from bodily injury or death." (*Id.* at 6.) The arbitration provision was intended "to be broadly interpreted," as it applied to "claims arising out of or relating to any aspect of the relationship between [the parties], whether based in contract, tort, fraud, misrepresentation, or any other statutory or common-law legal theory," and extended to claims that arose before the existence of or after the termination of the CSA. (*Id.*) The arbitration provision provided that "[a]ll issues are for the arbitrator to decide, except only a court can decide" issues "relating to the scope and enforceability of the arbitration provision," "whether a dispute can or must be brought in arbitration," and "whether the AAA cannot or will not administer the arbitration in accordance with this arbitration provision." (*Id.* at 7.) Any arbitration was to be governed by the rules of the American Arbitration Association (AAA). (*Id.*)

The arbitration provision contained an exception for claims filed in small claims court, stating "[d]espite this arbitration provision, either you or AT&T may bring an action seeking only individualized relief in the small claims court for the county (or parish) of your billing address, so long as the action is not removed or appealed to a court of general jurisdiction." (*Id.* at 6.)

Rivers' account with AT&T was terminated on October 29, 2025. (Doc. 1 at 2.) On October 30, 2025, Rivers filed this lawsuit, asserting federal and state causes of action against a variety of AT&T-related entities. Rivers seeks damages and declaratory and injunctive relief. Defendants have moved to compel arbitration of Rivers' claims pursuant to the arbitration provision contained in the CSA.

## LEGAL STANDARD

A court's ruling on a motion to compel arbitration is "in effect a summary disposition of the issue of whether or not there has been a meeting of the minds on the agreement to arbitrate," and the standard of review is analogous to a summary judgment motion. *In re Checking Acct. Overdraft Litig.*, 754 F.3d 1290, 1294 (11th

2

Cir. 2014) (quoting *Magnolia Cap. Advisors, Inc. v. Bear Stearns & Co.*, 272 F. App'x 782, 785 (11th Cir. 2008)). If the court concludes that there "is no genuine dispute as to any material fact concerning the formation of such an agreement," it "may conclude as a matter of law that [the] parties did or did not enter into an arbitration agreement." *Burch v. P.J. Cheese, Inc.*, 861 F.3d 1338, 1346 (11th Cir. 2017) (quoting *Bazemore v. Jefferson Cap. Sys., LLC*, 827 F.3d 1325, 1333 (11th Cir. 2016)). "If, on the other hand, the making of the agreement is in issue, 'the court shall proceed summarily to the trial thereof.'" *Id.* (quoting 9 U.S.C. § 4).

## DISCUSSION

Arbitration agreements are governed by the Federal Arbitration Act (FAA). 9 U.S.C. § 1, *et seq*. "The FAA [ ] places arbitration agreements on an equal footing with other contracts and requires courts to enforce them according to their terms." *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010) (citation omitted). When evaluating a motion to compel arbitration, courts must first determine whether an enforceable agreement to arbitrate exists. *Lambert v. Austin Ind.*, 544 F.3d 1192, 1195 (11th Cir. 2008). If an agreement exists, the court must then analyze whether the parties committed a dispute to arbitration. *Id.* If the dispute falls within the scope of a valid arbitration agreement, courts must compel arbitration and either stay or dismiss the action. *See Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) ("By its terms, the [FAA] leaves no place for the exercise of discretion by a district court . . . ."); *John B. Goodman Ltd. P'ship v. THF Constr., Inc.*, 321 F.3d 1094, 1095 (11th Cir. 2003) ("Under the FAA, a district court must grant a motion to compel arbitration if it is satisfied that the parties actually agreed to arbitrate the dispute." (citation omitted)); 9 U.S.C. § 3.

The existence and scope of an arbitration agreement is a matter of state contract law. *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1368 (11th Cir. 2005) ("Thus, in determining whether a binding agreement arose between the parties, courts apply the contract law of the particular state that governs the

3

formation of contracts."). Additionally, the FAA "establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983).

Rivers does not dispute that he electronically accepted the CSA that contains the arbitration provision. (Doc. 21 at 4 ("During checkout Plaintiff electronically accepted the standard Consumer Service Agreement ('CSA') containing the arbitration clause . . . .").) Instead, he argues the arbitration provision is unenforceable because (1) it is procedurally and substantively unconscionable, (2) contains an illusory small-claims court exception, (3) the federal statutory claims should not be arbitrated, (4) Rivers was fraudulently induced into accepting the CSA and the arbitration provision and therefore there has been no meeting of the minds, (5) the arbitration provision should not enforced for public policy reasons, and (6) AT&T waived arbitration through its conduct. (*Id.* at 1–2.) Despite Rivers' protestations, the arbitration provision is enforceable.

Rivers first argues the arbitration provision is substantively and procedurally unconscionable under Alabama law.[1] Unconscionability is an affirmative defense, and the party asserting the defense bears the burden of proof. *SCI Ala. Funeral Servs., LLC v. Hinton*, 260 So. 3d 34, 38 (Ala. 2018). "To avoid an arbitration provision on the ground of unconscionability, the party objecting to arbitration must show both procedural and substantive unconscionability." *Blue Cross Blue Shield of Ala. v. Rigas*, 923 So. 2d 1077, 1087 (Ala. 2005).

Substantive unconscionability "relates to the substantive contract terms themselves and whether those terms are unreasonably favorable to the more

---

[1] The CSA provides that the "law of the state in which [AT&T] currently provide[s] you with AT&T Services . . . governs this Agreement." (Doc. 12-1 at 12.) Neither party contests the applicability of Alabama law.

powerful party." *Id.* at 1086 (internal quotations omitted). There are four indications of substantive unconscionability: (1) "the breadth of the arbitration agreement," (2) a "provision purporting to invest the arbitrator with the threshold issues of arbitrability," (3) a provision subjecting the weaker party's claims to mandatory arbitration but permitting the stronger party to assert claims in court, and (4) a provision limiting the weaker party's right of recovery but reserving the stronger party's right to full redress for their claims. *SCI Ala. Funeral Servs., LLC*, 260 So. 3d at 39–40 (citing *Layne v. Garner*, 612 So. 2d 404, 408 (Ala. 1992)).

"Procedural unconscionability, on the other hand, deals with procedural deficiencies in the contract formation process, such as deception or a refusal to bargain over contract terms." *Leeman v. Cook's Pest Control, Inc.*, 902 So. 2d 641, 645 (Ala. 2004) (cleaned up). Courts consider whether a party had "overwhelming bargaining power" such that the other party had no meaningful choice about whether and how to enter into the transaction. *SCI Ala. Funeral Servs., LLC*, 260 So. 3d at 39. Courts require that a party "'shop around' in order to show that there was no meaningful alternative." *Pitchford v. AmSouth Bank*, 285 F. Supp. 2d 1286, 1295 (M.D. Ala. 2003) (quoting *Am. Gen. Fin., Inc. v. Branch*, 793 So. 2d 738, 751–52 (Ala. 2000)).

Rivers argues that the arbitration provision is substantively unconscionable because it forces him to waive his right to a jury trial; "bars class-wide relief"; and requires him to bear arbitration fees. He further states that the arbitration provision violates the mandatory fee-shifting provisions in several federal statutes.

None of these assertions support a finding of substantive unconscionability. First, Rivers did not waive any of his substantive rights. "[A]s the Supreme Court has recognized, a party agreeing to arbitration does not waive any substantive statutory rights; rather, the party simply agrees to submit those rights to an arbitral, rather than a judicial, forum." *Caley*, 428 F.3d at 1371 (citing *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985)). Moreover, "[t]he

Seventh Amendment does not confer the right to a trial, but only the right to have a jury hear the case *once it is determined that the litigation should proceed before a court*. If the claims are properly before an arbitral forum pursuant to an arbitration agreement, the jury trial right vanishes." *Id.* (emphasis in original) (quoting *Am. Heritage Life Ins. Co. v. Orr*, 294 F.3d 702, 711 (5th Cir. 2002)). Second, the Eleventh Circuit repeatedly has upheld class action waivers in arbitration agreements. *See, e.g.*, *Caley*, 428 F.3d at 1378; *Jenkins v. First Am. Cash Advance of Ga., LLC*, 400 F.3d 868, 877 (11th Cir. 2005) ("[A]rbitration agreements precluding class action relief are valid and enforceable."); *Cruz v. Cingular Wireless, LLC*, 648 F.3d 1205, 1207 (11th Cir. 2011) (holding that state law purporting to invalidate class action waiver in an arbitration agreement is preempted by the FAA); *see also AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 340–42 (2011) (holding that state law which "classif[ied] most collective-arbitration waivers in consumer contracts as unconscionable" was preempted by the FAA). Third, as AT&T points out, Rivers is incorrect in his assertion that he would bear all costs of arbitration. To the contrary, the CSA provides that AT&T will pay all "AAA filing, administration, case-management, hearing, and arbitrator fees" for claims valued at $75,000 or less. (Doc. 12-1 at 7.) For claims over $75,000, the CSA is silent. But under the default rules of the AAA, Rivers' arbitration costs, including fees and arbitrator compensation, would be capped at $225.[2] In short, Rivers has failed to meet his burden to demonstrate substantive unconscionability.

Rivers also argues the arbitration provision is procedurally unconscionable because it was presented to him on a "take-it-or-leave-it form" and he had "zero bargaining power"; it was embedded deep within the multi-page CSA; he never separately signed or initialed the arbitration provision; he had no realistic alternative

---

[2] Am. Arbitration Ass'n, Consumer Arbitration Rules and Mediation Procedures: Administrative Fee Schedule, https://www.adr.org/media/3uofn4lu/consumer_rules_and_mediation_procedures_feeschedule.pdf.

wireless carrier; and there was inequality of sophistication between the parties. His arguments fall short. The very first page of the CSA in bold text alerts consumers like Rivers that the CSA required the parties to resolve their disputes through arbitration, and then the CSA contains pages of information about the dispute resolution program including the arbitration provision. And aside from a conclusory statement that there are no realistic alternative wireless carriers, Rivers has not provided any evidence that he "shopped around" for meaningful alternative wireless carriers. Rivers thus has failed to establish procedural unconscionability. *See, e.g.*, *Conseco Fin. Corp.-Ala. v. Boone*, 838 So. 2d 370, 373 (Ala. 2002); *Green Tree Fin. Corp. v. Lewis*, 813 So. 2d 820, 825 (Ala. 2001) (noting that "[n]othing in the record suggests that the [party] attempted to 'shop around' for a financing arrangement that would not call for arbitration of disputes"); *Pitchford*, 285 F. Supp. 2d at 1295 ("Although a party would not have to spend a considerable amount of time and effort to find alternatives, Alabama Courts, nevertheless, do require that a party 'shop around' in order to show that there was no meaningful alternative.").

Next, Rivers argues the arbitration provision is "illusory" because it contains an exception or carve-out for cases brought in small claims court. He states that it is illusory because the amount-in-controversy limit under Alabama law precludes him from bringing his claims in small claims court. Under Alabama law, a contract is illusory if it "confer[s] no legal enforceable rights upon either party." *United Butane Sales, Inc. v. Bessemer-Suburban Gas Co.*, 207 So. 2d 416, 417 (1968). In other words, an illusory contract lacks mutuality of obligation between the parties. *See Johnson Enters. of Jacksonville, Inc. v. FPL Grp., Inc.*, 162 F.3d 1290, 1311 (11th Cir. 1998) (finding promise illusory when a promisor "says, in effect, 'I will if I want to'"). But Rivers provides no evidence of this. And a plain reading of the CSA does not support Rivers' interpretation, as the arbitration provision itself shows that both AT&T and Rivers agreed to be bound by the mandatory arbitration provision, that both parties agreed that disputes filed in small claims court and disputes over bodily

7

injury and death would not be arbitrated, and that the arbitrator has the authority to award declaratory and injunctive relief. *Compare Caley*, 428 F.3d at 1373–74 (holding contract was not illusory because both parties agreed to be bound by the terms of the contract), *and Wright v. Cir. City Stores, Inc.*, 82 F. Supp. 2d 1279, 1283–84 (N.D. Ala. 2000) (finding contract not illusory where both parties "are fully bound to arbitrate any employment-related disputes raised by the associate, to comply with the same procedures, and to be bound by the results"), *with Larsen v. CitiBank, FSB*, 871 F.3d 1295, 1317 (11th Cir. 2017) (holding contract illusory because one party reserved the right to "change or add to the terms and conditions" at any time). Finally, to the extent he argues that he cannot exercise his right to bring any claims in small claims court, he is incorrect. The CSA would allow him to do so, provided that his claim meets the applicable jurisdictional requirements under state law. *See* Ala. Code § 12-12-31 (limiting small claims actions to matters in which the amount in controversy does not exceed $6,000).

Additionally, Rivers argues the arbitration provision is unenforceable because he was fraudulently induced into accepting it. In particular, he states that he was fraudulently induced because the CSA does not have a wet ink signature and it mischaracterizes fees and omits promotional credit terms. Each of these arguments is directed toward the CSA as a whole, not the arbitration provision. "'[W]hen a claim of fraud in the inducement is directed toward the arbitration clause itself, the issue is adjudicated by the court,' but 'when a claim of fraud in the inducement is directed toward the entire contract, . . . the issue is subject to arbitration.'" *Harold Allen's Mobile Home Factory Outlet, Inc. v. Early*, 776 So. 2d 777, 782 (Ala. 2000) (quoting *Inv. Mgmt. & Rsch., Inc. v. Hamilton*, 727 So. 2d 71, 78 (Ala. 1999)). And when the parties agree to delegate issues, such as issues of arbitrability, to the arbitrator—as the parties do here—"a court possesses no power to decide the arbitrability issue." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 68 (2019).

Here, Rivers' fraudulent inducement allegations are unsupported by any evidence and are issues of arbitrability that are for the arbitrator to resolve. And further, there is no legal requirement that an agreement, let alone an arbitration provision, contain a wet-ink signature for the contract or agreement to bind a party to its terms and conditions. Ala. Code § 8-1A-7(c), (d) ("If a law requires a signature, an electronic signature satisfies the law"); *see also McDonald v. Grimsley*, 772 F. Supp. 3d 1306, 1315–16 (S.D. Ala. 2025) (noting that electronic signatures on arbitration agreements are valid under Alabama law). To the contrary, electronic acceptances, as is the case here, create binding and enforceable agreements. *See, e.g.*, *Brickhouse Cap., LLC v. Coastal Cryo AL, LLC*, 393 So. 3d 467, 478 (Ala. 2023) (enforcing contract signed electronically); *Jefferson v. Best Buy Co.*, No. 2:08-cv-121-WKW, 2010 WL 1533107, at *4 (M.D. Ala. Mar. 18, 2010) (same), *report and recommendation adopted Jefferson v. Best Buy Co.*, No. 208-CV-121-WKW, 2010 WL 1533113 (M.D. Ala. Apr. 15, 2010).

Rivers next argues that AT&T waived its right to compel arbitration through its conduct. "A party has waived its right to arbitrate if, under the totality of the circumstances, the party has acted inconsistently with the arbitration right . . . ." *S & H Contractors, Inc. v. A.J. Taft Coal Co.*, 906 F.2d 1507, 1514 (11th Cir. 1990) (cleaned up), *abrogated on other grounds by Morgan v. Sundance, Inc.*, 596 U.S. 411 (2022). "A key factor in deciding this is whether a party has substantially invoked the litigation machinery prior to demanding arbitration." *Gutierrez v. Wells Fargo Bank, NA*, 889 F.3d 1230, 1236 (11th Cir. 2018) (quotation marks omitted and alterations adopted). "[T]he purpose of the waiver doctrine is to prevent litigants from abusing the judicial process." *Id.* "Acting in a manner inconsistent with one's arbitration rights and then changing course mid-journey smacks of outcome[-]oriented gamesmanship played on the court and the opposing party's dime." *Id.* "[T]he key ingredient in the waiver analysis is fair notice to the opposing party and the [d]istrict [c]ourt of a party's arbitration rights and its intent to exercise them."

9

*Id.*; *see also Morgan*, 596 U.S. at 414 (holding that courts cannot require a showing of prejudice in order to find a waiver of the right to arbitration); *CNU of Ala., LLC v. Cox*, 416 So. 3d 154, 162–63 (Ala. 2024) (same). Waiver cannot be lightly inferred.

Rivers argues that the 34-day delay between the date on which AT&T was served with the Summons and Complaint and the date on which it moved for arbitration constitutes waiver of the right to arbitrate. Rivers is wrong. AT&T gave fair and timely notice of its intent to exercise its right to arbitrate by filing its arbitration motion within 35 days of service, before it answered the Complaint, and before it engaged in any discovery. This timeline does not evidence waiver. *Compare Dockeray v. Carnival Corp.*, 724 F. Supp. 2d 1216, 1222 (S.D. Fla. 2010) (finding two months' delay alone is insufficient to constitute waiver), *with Hales v. ProEquities, Inc.*, 885 So. 2d 100, 106–07 (Ala. 2003) (holding two-year delay constituted waiver of right to arbitration). And further, Rivers' alleged pre-litigation actions or time-periods do not qualify as the type of actions considered for purposes of determining whether a party has waived the right to compel arbitration of a dispute. *See Prcic v. Carnival Corp.*, 641 F. Supp. 3d 1313, 1320 (S.D. Fla. 2022) (finding that party cannot waive right to arbitrate based on pre-litigation conduct); *Payne v. Savannah Coll. of Art & Design, Inc.*, 81 F.4th 1187, 1201 (11th Cir. 2023) (holding that conduct in prior litigation cannot be considered in arbitration waiver analysis in subsequent lawsuit).

Lastly, Rivers raises a plethora of policy arguments as to why the arbitration provision should not be enforced. But his arguments largely relate to the merits of his substantive claims—not the arbitration provision itself. They are insufficient to overcome the "liberal federal policy favoring arbitration agreements." *Hill v. Rent–A– Ctr., Inc.*, 398 F.3d 1286, 1288 (11th Cir. 2005) (quoting *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24). And regardless, similar allegations have been repeatedly rejected by federal and Alabama courts. *See Lindo v. NCL (Bahamas), Ltd.*, 652 F.3d

10

1257, 1269 (11th Cir. 2011) ("U.S. statutory claims are arbitrable, unless Congress has specifically legislated otherwise . . . ."); *Caley*, 428 F.3d at 1378–79 (holding that confidentiality of arbitration proceedings does not render arbitration agreement unconscionable); *Am. Fam. Life Assurance Co. of Columbus v. Hubbard*, 759 F. App'x 899, 906 (11th Cir. 2019) (reiterating the enforceability of a confidentiality provision in an arbitration agreement); *Afr. Methodist Episcopal Church, Inc. v. Smith*, 217 So. 3d 816, 823–26 (Ala. 2016) (same). Rivers has not shown why his claims here are any different.

## CONCLUSION

Rivers agreed to arbitrate all disputes arising out of his relationship with AT&T when he accepted the CSA, and his claims against the Defendants clearly arise out of and relate to that relationship and the CSA. As such, he must proceed with his claims in arbitration. Accordingly, it is **ORDERED** as follows:

(1)　Plaintiff's *Emergency Motion for Temporary Restraining Order and Motion for Expedited Hearing* (doc. 2) is **DENIED** as moot;

(2)　The *Motion By Defendant AT&T Inc. To Dismiss Plaintiff's Complaint For Lack of Personal Jurisdiction, Or In The Alternative, To Compel Arbitration* (doc. 11) is **GRANTED** to the sole extent it seeks to compel arbitration, but in all other respects, it is **DENIED**;

(3)　The *Motion To Compel Arbitration* (doc. 12) filed by Defendants AT&T Mobility LLC, New Cingular Wireless PCS, LLC d/b/a AT&T Mobility, and AT&T Inc. is **GRANTED**;

(4)　Plaintiff's claims against the Defendants are compelled to arbitration pursuant to the arbitration provision contained in the Consumer Service Agreement;

(5)　This case is **STAYED** pending conclusion of the arbitration; and

(6)　On or by **May 4, 2026**, the parties shall file a status report concerning the arbitration and shall file updated reports every 90 days thereafter.

**DONE** and **ORDERED** on this the 26th day of January 2026.

_/s/ R. Austin Huffaker, Jr._
R. AUSTIN HUFFAKER, JR.
UNITED STATES DISTRICT JUDGE